UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DREW A. CARSON, | ) | CASE NO. 1:18CV1225 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| UNUM LIFE INSURANCE COMPANY | ) | |
| OF AMERICA, | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon Plaintiff's Motion (ECF DKT #20) to Overturn the Plan Administrator's Claim Denial and Defendant's Motion (ECF DKT #19) to Uphold Plan Administrator's Claim Denial. For the following reasons, the Court **DENIES** Plaintiff's Motion and **GRANTS** Defendant's Motion.

**I. Factual Background**

Plaintiff, Drew A. Carson, filed this Employee Retirement and Income Security Act of 1974 ("ERISA") action against Defendant, Unum Life Insurance Company of America ("Unum"). Plaintiff was, during part of the time relevant to this case, employed as a corporate

attorney at Miller Goler Faeges LLP. During this term of employment and after he quit working there, Plaintiff filed a claim seeking to be insured under a Long-Term Disability ("LTD") Benefits Policy governed by ERISA.

**A. Long-term Disability Plan**

As an employee benefit, Miller Goler Faeges LLP provided a LTD plan through Defendant to its employees. This plan provides:

> "'Disability' and 'disabled' mean that because of injury or sickness:
>
> 1. The insured cannot perform each of the material duties of his regular occupation; or
>
> 2. . . . [W]hile unable to perform all of the material duties of his regular occupation on a full-time basis is: performing at least one of the material duties of his regular occupation or another occupation on a part-time or full-time basis; and earning currently at least 20% less per month than his indexed pre-disability earnings due to that same injury or sickness."

According to the LTD policy, an insured must provide proof of continued disability and regular attendance of a physician. An insured must also satisfy an elimination period of 180 days between when he or she sustained an injury and the initial receipt of benefits. Defendant further states it must receive proof of claim no later than thirty days after the elimination period ends. Finally, a claimant cannot bring legal action more than three years after the time Defendant required proof of claim.

Defendant is also the Claims Administrator of the LTD benefit plan. Therefore, Defendant has the sole discretion to interpret the Plan's definition of "disability" and determine an individual's benefit eligibility. Defendant's Plan also provides an avenue for an appeal process, after benefits are determined.

**B. Plaintiff's Medical History**

The information contained in this section regarding Plaintiff's medical history and the subsequent section regarding the claim and appeals process is a short restatement. A much more detailed history is contained in the cross-motions entered by Plaintiff and Defendant and the full record submitted to the Court.

Plaintiff suffered from pre-existing mental health issues before the time period relevant to this case. From 2003 onwards, Plaintiff suffered from insomnia and sleep apnea. (Record[1] at 63-66, 78-84).

Plaintiff's billable hours began to decrease in July of 2011, although his non-billable hours and pay had not changed yet. The first time Plaintiff was entirely unable to work due to his condition was on November 18, 2011, when Plaintiff and his employer ended their relationship. (Record at 36, 42-43). This coincides with the same day Plaintiff last entered billable hours for Miller Goler Faeges, LLP. (*Id.* at 36, 42-43). On December 8, 2011, Plaintiff submitted a disability claim to Defendant, which stated he could no longer perform the material duties of a litigator, including "appearing in court, researching, drafting, [and] communicating with clients." (*Id.*).

---

[1] The administrative record was filed on August 16, 2018. (ECF DKT #12). For ease of access, the Court has omitted the "UA-CL" prefix before citing to the record.

In December 2010, Plaintiff suffered a "debilitating physical injury" and began to experience "bilateral chronic groin pain. (ECF DKT #20) After the onset of this pain, Plaintiff met with five separate doctors to determine the cause of and potential cure for his pain. (*Id.* at 727, 738, 753, 851, 1445). He began to attend physical therapy at this time. (*Id.* at 839). In March of 2011, Plaintiff admitted himself to the behavioral health unit at Marymount Hospital due to suicidal thoughts related to his lack of improvement. (*Id.* at 761-783). Plaintiff was released at his request the same day after discovering the hospital desired to remove him from his medications. (*Id.*).

After receiving MRIs and consulting with two more doctors, Plaintiff began to see Dr. David Grischkan, who suspected the existence of an athletic pubalgia. (*Id.* at 1445). Plaintiff underwent exploratory surgery by Dr. Grischkan on September 8, 2011. (*Id.* at 1445). During this surgery, Dr. Grischkan observed the thickening of a band running alongside the conjoined tendon and performed a reconstruction by placing gore tex mesh. (*Id.* at 859, 892).

Plaintiff improved physically until he experienced complications in March of 2012. (*Id.* at 857). Due to these self-described "crippling complications," Plaintiff underwent a second, corrective surgery on June 22, 2012 where the mesh was removed by Dr. Diya Alaedeen. (*Id.* at 932-934). Plaintiff's medical record ends in July of 2012, following his recovery from the revision groin surgery.

Plaintiff submitted the records of his psychologist, psychiatrist and treating doctors. Dr. David Pincus, D.M.H., Plaintiff's psychologist, opined that Plaintiff was "partially disabled throughout 2011, significantly so by July 2011, and fully by November 2011." (*Id.* at 84). Dr. Omar Elhaj, Plaintiff's psychiatrist after September 30, 2011, diagnosed Plaintiff with major

depressive disorder, generalized anxiety disorder, panic disorder and sedative and hypnotic abuse. (*Id.* at 643-647). Further, Dr. Kevin Trangle, MD, MBA, stated Plaintiff had been "disabled and unable to work in his full capacity since February 2011 and unable to work at all since July 2011." (*Id.* at 653-681).

### C. Defendant's Denial of Plaintiff's Claims and Appeals

#### 1. Original Claim

Plaintiff filed his first claim on December 8, 2011. (*Id.* at 36). Defendant referred Plaintiff's file to one of their clinical consultant psychiatrists, Nicholas Kletti, M.D. Dr. Kletti concluded the record did not support "psychiatric restrictions and limitations" or "any impairment." (*Id.* at 385-390). Dr. Kletti similarly reached out to Dr. Pincus for more information since Dr. Pincus had not filed any treating records. Dr. Kletti continued to find no restrictions or disability and referred the claim for further clinical review. (*Id.* at 432-440).

A second clinical consultant psychiatrist, Dr. Stuart Shipko, M.D., reviewed the record and agreed with Dr. Kletti's conclusion that Plaintiff showed no disabling restrictions. (*Id.* at 144). Further, Defendant asked Dr. Elhaj and Dr. Mansoor Ahmed, M.D., to describe Plaintiff's limitations or restrictions. Neither restricted Plaintiff from work, nor did they identify any other disabling limitations. (*Id.* at 193-194, 215-216). On May 11, 2012, Defendant denied Plaintiff's claim on the basis that Plaintiff could perform necessary occupational duties. (*Id.* at 501-507).

#### 2. First Appeal

Plaintiff appealed through counsel on July 31, 2012. (*Id.* at 557). During this period, Defendant did not receive any new documents from Plaintiff and reviewed the entire file Plaintiff originally submitted again. (*Id.* at 535). Dr. Peter Brown, M.D., a clinical consultant

psychiatrist, completed this file review (*Id.* at 586-589). After reviewing Plaintiff's file, Dr. Brown denied finding any support for a disability. (*Id.*). On December 11, 2012, Defendant affirmed its decision to deny Plaintiff's appeal. (*Id.* at 631-635).

### 3. Final Appeal

On January 22, 2013, Plaintiff, through counsel, re-appealed and submitted two new documents. (*Id.* at 642-647, 651-658). These documents included a November 30, 2012 supplemental report by Dr. Elhaj and a December 31, 2012 report by Dr. Trangle. Dr. Trangle's report included several hundred new documents, including medical records and provider information. (*Id.* at 651-81). As a result, Defendant requested new documents from Plaintiff's healthcare providers referenced by Dr. Trangle. The inclusion of this new record resulted in reviews and consultations with three separate clinicians: Richard Cole, R.N., Dr. Laina Rodela, M.D., and Dr. Brown. (*Id.* at 1317-34; 1346-1356; 1358-1363). During this appellate review, Unum determined there was evidence for disabling limitations related to Plaintiff's groin pain from September 8, 2011 to October 5, 2011 and March 10, 2012 to July 18, 2012. However, there was no evidence of continuous physical disability over the elimination period. (*Id.* at 1442). Further, the record noted various periods where Plaintiff did not see any medical or mental health doctors at all. After consulting with Mr. Cole and Dr. Rodela, Dr. Brown recommended denying Plaintiff's claim due to a lack of disability findings. Defendant ultimately affirmed its prior decision to deny benefits on September 3, 2013. (*Id.* at 1441-49).

## II. Law and Analysis

There is a three-year statute of limitations period for ERISA actions, as well as a three-year period listed in Defendant's LTD Plan. While the limitations period has likely expired, the

Court will consider Plaintiff's ERISA claim on the merits.

In order to proceed in a review of an ERISA action, the Court must first determine which standard of review should apply. The Supreme Court has held, "a denial of benefits . . . is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber v. Bruch*, 489 U.S. 101, 115 (1989) (quoting 29 U.S.C. § 1132(c)). Because Unum's LTD plan provides the administrator with authority to determine benefit eligibility, the "highly deferential arbitrary and capricious standard of review" is the proper standard under which to evaluate Plaintiff's claim. *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir. 1996). Therefore, the Court will consider Defendant's benefit denial under the arbitrary and capricious standard.

### A. Arbitrary and Capricious Standard of Review

Under this standard, Plaintiff bears the burden of proving the denial was arbitrary and capricious. *Farhner v. United Transp. Union Discipline Income Protection Prog.*, 645 F.3d 338, 343 (6th Cir. 2011). The arbitrary and capricious standard, "is the least demanding form of judicial review of administrative action . . . . [T]he Court must decide whether the plan administrator's decision was rational in light of the plan's provisions. . . . When it is possible to offer a reasoned explanation, based on evidence . . . th[e] outcome is not arbitrary and capricious." *Williams v. Int'l Paper Co.,* 227 F.3d 706, 712 (6th Cir. 2000) (internal citations and quotations omitted). Under this review, the Court should only consider the administrative record before the Defendant at the time of the decision. *Schwalm v. Guardian Life Ins.*, 626 F.3d 299, 308 (6th Cir. 2010).

The Court must determine whether the plan administrator's decision to deny benefits was rational according to the provisions of the plan. *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 169 (6th Cir. 2003). The Court may review both the "quality and quantity of the medical evidence and the opinions on both sides of the issues." *McDonald*, 347 F.3d at 172. Factors considered under *McDonald* include whether Plaintiff's doctors came to a unanimous opinion, whether Defendant's reviewers came to a different conclusion, and whether doctors or reviewers utilized by either side changed their opinions over time. *Id.* A plan administrator is allowed to rely upon the medical opinion of one doctor over that of another in determining whether a claimant is entitled to benefits; this decision is not considered "arbitrary and capricious" if it is based upon a reasoned explanation. *Fillar v. UNUM Provident Corp.*, 2006 WL 2331184 (W.D. Mich. Aug. 10, 2006) (*citing Birdsell v. United Parcel Serv. Of Am.*, 94 F.3d 1130, 1133 (8th Cir. 1996)).

Plaintiff alleges a conflict of interest exists since Defendant is both the provider of the LTD benefits and the administrator of the claim. In *Metropolitan Life Ins. Co., v. Glenn*, the Court held that situations where companies are both the provider of benefits and the claim administrator may be evidence of a conflict of interest. 554 U.S. 105, 108 (2008). Plaintiff claims Defendant's status as both renders Defendant's denial of benefits arbitrary and capricious. In addition, Plaintiff claims a file-only review by Defendant renders the decision arbitrary and capricious. Plaintiff further seeks equitable relief due to a breach of fiduciary duty in the form of prejudgment interest, recovery of retirement and non-retirement savings and disgorgement of any "ill-gotten profits" retained by Defendant. The Court will address both the conflict of interest claim and the equitable relief claim in turn.

### 1. Conflict of Interest

Plaintiff alleges a conflict of interest exists in that Unum was both the claim administrator and the benefits provider. Defendant responds by claiming the record before the Court offers a "reasonable explanation" as to why Defendant concluded Plaintiff failed to prove a continuing disability. *See Schwalm*, 626 F.3d at 308. Thus, Defendant insists there was no conflict of interest.

In proving a conflict of interest, Plaintiff must go beyond merely showing the benefit provider and plan administrator were the same entity and must demonstrate other factors. *Metropolitan Life*, 554 U.S. at 108. *See also Pruzzi v. Summa Med. Plan*, 137 F.3d 431, 433 (6th Cir. 1998). There is no evidence Defendant's status as both the provider and administrator played any role in the decision to deny Plaintiff's benefits. According to the *Met Life* court, the "significance of the conflict to that determination will depend on the circumstances of each case." 554 U.S. at 110-11. Further, a conflict of interest "should prove more important . . . where circumstances suggest a higher likelihood that it affected the benefits decision" and "less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and promote accuracy." *Id.* at 117. In the present case, Defendant conducted five separate file reviews by four different individuals, thus reducing potential bias. Further, when Plaintiff provided new information after his first appeal, Defendant accepted the re-appeal and engaged three more individuals to review the material. In this way, a possible conflict of interest was minimized when Defendant's denied Plaintiff's claim.

Plaintiff further claims there is a conflict of interest in that Defendant "arbitrarily ignored the records of [his] other treating physicians." (ECF DKT #20). As per the court in *Black &*

*Decker Disability Plan v. Nord*, "[c]ourts have no warrant to require administrators automatically to accord special weight to the opinions of claimant's physician; nor may courts impose . . . a discrete burden of explanation when [plan administrators] credit reliable evidence that conflicts with a treating physician's evaluation." 538 U.S. 822, 834 (2003). Defendant conducted five separate reviews of Plaintiff's submitted medical record, with each reviewer coming to the same result. Per the *Black & Decker* court, there is no burden Defendant must satisfy to explain why it valued the evidence it did. 538 U.S. at 834.

If there were other factors showing a conflict of interest, Plaintiff's argument may be more persuasive. For example, in *Demer v. IBM Corp. LTD Plan*, the court discussed how the plan administrator hired the same doctors to provide all their file reviews and paid them hundreds of thousands of dollars to do so. 835 F.3d 892 (9th Cir. 2016). There is no such evidence here. Instead, "the lack of more powerful evidence . . . or of statistics showing a parsimonious pattern of assessments disfavorable to claimants . . . minimizes the weight [assigned] to the conflict of interest as a factor." *Demer*, 835 F.3d at 903. No evidence of this nor any factor other than Defendant's status as both claim administrator and benefits provider, is offered by Plaintiff.

### 2. Record and File Reviews

Plaintiff further claims Defendant denied benefits in an arbitrary and capricious way when Defendant utilized file-only reviews of Plaintiff's mental health and chronic pain records. Plaintiff states file-only decisions are disfavored when making determinations related to mental illness or chronic pain. *Shaw v. AT&T Umbrella Benefit Plan*, 795 F.3d 538, 550 (6th Cir. 2005). However, "opinions of treating physicians should not necessarily be accepted over those

of reviewing experts simply because the treating physicians physically examined the claimant."
*Smith v. Bayer Corp. Long Term Disability Plan*, 275 F. App'x 495, 508 (6th Cir. 2008).
Instead, file-only reviews "'may in some cases, raise questions about the thoroughness and accuracy of benefit determination'". *Smith*, 275 F. App'x at 508. For Plaintiff, each of Defendant's five separate reviews came to the same conclusion regarding Plaintiff's mental state. Although Plaintiff claims file-only reviews should not be conducted when determining one's mental state, the Sixth Circuit has ruled there is nothing inherently objectionable about a file-only review as long as it is performed by a qualified physician in the context of a benefits determination. *Calvert v. Firstar Fin. Inc.,* 409 F3d. 286, 296 (6th Cir. 2005). Due to Sixth Circuit precedent on file-only reviews, there is no evidence Defendant acted arbitrarily or capriciously in its choice of reviews.

Further, although the doctors who performed these reviews disagreed with some of the evaluations included by Plaintiff in his record, each provided a reasonable basis for reaching their conclusions. In *Curry v. Eaton Corp.*, the court held that a plan administrator may not merely ignore the opinions of treating physicians but may resolve conflicts between physicians by providing reasons for adopting opinions contrary to those of treating physicians. 400 F. App'x 51, 60 (6th Cir. 2010). While Plaintiff believes Defendant should have asked psychiatrists or other mental health experts to do an in-person review, the fact that there was no in-person review is not dispositive. Instead, as discussed in *Smith*, this may raise questions about Defendant's thoroughness. This critique is easily overcome by the fact Defendant conducted three separate rounds of reviews by four separate medical professionals. Further, Defendant accepted a second appeal from Plaintiff and cited to numerous times in the record

where Plaintiff's doctors discussed his improvements. *See* Record at 215, 1216-1218, 1230, 1232, 1234. There is no evidence to suggest Defendant was neither thorough nor acted arbitrarily or capriciously in coming to a different conclusion regarding Plaintiff's disability status.

Finally, Plaintiff disagrees with Defendant's finding that Plaintiff was not disabled for the entire period in question. Defendant responds by citing multiple months where Plaintiff did not receive mental health or physical treatment, including a five-month period where Plaintiff attended no office visits from September 8, 2011 to March 30, 2012. Further, as part of a comprehensive review of the entire record, Defendant appropriately took into account the entirety of the record. *See Schwalm*, 626 F.3d at 308. Therefore, since this gap in treatment was included in the submission of Plaintiff's medical records, there is no suggestion Defendant's conclusion was invalid in any way.

### B. Equitable Relief due to Breach of Fiduciary Duty

Plaintiff's second claim is a request for Equitable Relief due to a Breach of Fiduciary Duty. This claim includes requests for: "(1) punitive prejudgment interest; (2) retirement and non-retirement savings necessary for [Plaintiff's] support during the time period he was denied benefits; and (3) . . . Unum's disgorgement of the ill-gotten profits" retained by Defendant when they denied Plaintiff's benefits. (Pl. Compl. ¶ 185).

"A fiduciary breaches his duty by providing plan participants with materially misleading information, 'regardless of whether the fiduciary's statements or omissions were made negligently or intentionally.'" *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416 (6th Cir. 2002) (quoting *Krohn v. Huron Mem. Hosp'l*, 173 F.3d 542, 547 (6th Cir. 1991)). There is however,

no proof Defendant provided misleading information to Plaintiff in denying his claim nor is there proof this duty was breached in any other way.

Plaintiff's claim – and each subclaim – is based exclusively on Defendant's denial of benefits. However, as in *Moore v. Lafayette Life Ins. Co.,* Plaintiff is precluded by Sixth Circuit law from "repackaging" his benefit denial claim as an equitable claim for breach of fiduciary duty. 458 F.3d 416. In *Moore*, plaintiff similarly submitted a claim for denial of benefits and another for equitable relief. *Id.* The *Moore* court held, "subclaims (a) through (c) were merely restatements of Plaintiff's claim for benefits. . . . [P]laintiff's ability to bring suit for payment of benefits under 29 U.S.C. § 1132(a)(1) precluded Plaintiff's suit under the "catch-all" remedial section for those subclaims sounding as failure to pay due benefits." *Id.* at 428, *see Varity Corp. v. Howe*, 516 U.S. 489 (1996). Plaintiff's first claim to overturn the plan administrator's decision to deny his benefits is provided for by § 1132(a)(1), which authorizes actions brought to "enforce . . . rights under the terms of the plan, or to clarify . . . rights to future benefits." 29 U.S.C. § 1132(a)(1)(B). Plaintiff cannot also file a claim under 29 U.S.C. § 1132(a)(3) for equitable relief.

The Supreme Court, in *Varity Corp. v. Howe*, rejected plaintiff's attempt to re-characterize the denial of benefits as a breach of fiduciary duty. 516 U.S. at 512. This Court would only address a breach of fiduciary claim if Plaintiff's injury resulting from this breach had been separate and distinct from the denial of benefits. *See Rochow v. Life. Ins. Co.*, 780 F.3d 364, 372 (6th Cir. 2005) (en banc). Regardless of his disappointment with the result of his benefit denial, Plaintiff is barred from filing the claim for equitable relief based on a breach of fiduciary duty. Therefore, the Court rejects Plaintiff's claim for equitable relief and subclaims

for prejudgment interest, savings and disgorgement because they all stem from the same injury – the denial of benefits.

### III. Conclusion

After a thorough review of the administrative record, the Court finds Defendant's denial of LTD benefits was not arbitrary and capricious. Further, there is no evidence of a conflict of interest nor any legal basis barring Defendant from conducting a file-only review. Defendant relied upon four separate doctors, who conducted five separate reviews and recommended each time that Defendant deny Plaintiff's claim for benefits.

There is similarly no statutory provision allowing for Plaintiff to file a claim for equitable relief for breach of fiduciary duty. Plaintiff is precluded by statute from filing both his first claim related to the denial of benefits and his second equitable relief claim. Accordingly, the Court denies Plaintiff's claim for equitable relief.

For the reasons set forth above, the Court **DENIES** Plaintiff's Motion to Overturn the Plan Administrator's Claim Denial (ECF DKT #20) and **GRANTS** Defendant's Motion to Uphold the Administrative Decision (ECF DKT #19).

**IT IS SO ORDERED.**

**DATE: June 18, 2019**

                                      **s/ Christopher A. Boyko**
                                      **CHRISTOPHER A. BOYKO**
                                      **United States District Judge**